# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TERRIE G. OBER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>COMMISSIONER of the Social )<br>Security Administration, )<br>)<br>Defendant. ) | Case No. CIV-17-79-SPS |

## OPINION AND ORDER

The claimant Terrie G. Ober requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was fifty-four years old at the time of the administrative hearing (Tr. 53). She completed four or more years of college, and has previously worked as a teacher and a counselor (Tr. 40, 205). The claimant alleges that she has been unable to work since an amended alleged onset date of December 10, 2013, due to an L3 compression fracture, severe depression, osteoporosis, osteoarthritis, right knee pain, and nerves on the right side of her body (Tr. 204-205).

**Procedural History**

On September 29, 2014, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ Thomas John Wheeler conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated January 21, 2016 (Tr. 20-42). The Appeals Council denied review, so the ALJ's opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except that her push/pull was unlimited up to the lift/ carry restrictions, and she could only occasionally stoop, kneel, crouch, and climb ramps/stairs, but she could never crawl or climb ladders/ropes/scaffolds. Additionally, he found she

could perform simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis, and adapt to a work situation, but that she should have only incidental contact with the public (Tr. 31-32). The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work that she could perform in the national economy, *e. g.*, inspector packer, small product assembler, and electrical accessory assembler (Tr. 41-42).

**Review**

The claimant contends that the ALJ erred by: (i) failing to properly consider her borderline age situation, and (ii) failing to properly consider her mental impairments as assessed by the state reviewing physicians. The Court agrees with the claimant's arguments, and the decision of the Commissioner must therefore be reversed.

The ALJ found that the claimant had the severe impairments of mild degenerative disc disease of the lumbar spine with mild disc bulge, status post mild L3 compression fracture, degenerative joint disease status post right knee lateral tear, and mild depressive disorder (Tr. 22). The ALJ also noted that the claimant was obese, and further identified her nonsevere impairments as status post lap band surgery, gastroesophageal reflux disease (GERD), hiatal hernia, and osteoporosis (Tr. 28-29).

On July 8, 2013, the claimant underwent a psychological evaluation as part of a worker's compensation claim. Dr. David E. Johnsen, Ph.D., conducted a clinical interview, mental status examination, and behavioral observations, as well as administered psychological tests and reviewed the claimant's medical record (Tr. 535). He concluded that the claimant was suffering from a psychological overlay in the form of depression, as

-4-

well as a pain disorder with the major cause of depression (Tr. 537). He indicated that her personality style was "markedly dependent," making her reliant on others to take care of her pain and causing her to perceive herself as disabled even though she had continued to work (Tr. 537-538). He recommended a medication adjustment to better alleviate her depressive symptoms, and assessed her with pain disorder associated with both psychological factors and a general medical condition, as well as major depressive disorder single episode moderate (Tr. 538).

On November 26, 2014, state reviewing physician Laura Lochner, Ph.D., completed a Mental RFC Assessment and found in the area referred to as "Section I" that the claimant was markedly limited in the typical three categories of ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general public (Tr. 102-103). In the written comments section ("Section III"), Dr. Lochner wrote that the claimant could perform simple tasks with routine supervision, could relate to supervisors and peers on a limited work basis, and could adapt to a work situation, but could not relate to the general public (Tr. 103). These findings were largely affirmed on review by Jason Gunter, Ph.D., on June 16, 2015, except that he additionally found that the claimant was moderately limited in the ability to maintain attention and concentration for extended periods, although he reached the same Section III conclusions as Dr. Lochner (Tr. 118-119).

At the administrative hearing, the ALJ elicited testimony from a VE to determine if there were jobs a hypothetical person could perform with the following limitations:

> . . . limited to lifting 20 pounds on occasion, 10 pounds frequently. Sitting, six hours. Walking or standing six hours. Pushing and pull would be unlimited except for the lifting and carrying restrictions. Only occasionally stooping, kneeling, crouching and climbing ramps or stairs. No crawling or climbing of ladders, ropes or scaffolds. And the hypothetical individual can perform simple tasks with routine supervision. Can relate to supervisors and peers on a superficial work basis. And should have only incidental contact with the general public, but she is able to adapt to a work situation.

(Tr. 87). The VE identified that the claimant could perform the jobs of inspector/packer, DICOT § 559.687-074; small products assembler, DICOT § 706.684-022; and electrical accessory assembler, DICOT § 729.687-010 (Tr. 88).

In his written opinion at step two, the ALJ determined the claimant's severe and nonsevere impairments, and summarized the medical evidence in the record, including her treatment notes with Dr. Barling and Dr. Johnsen's psychiatric evaluation (Tr. 22-29). At step four, he summarized the claimant's hearing testimony. As to her mental impairments at step four, the ALJ made some reference to her diagnosis of mild depressive disorder, but did not discuss Dr. Barling's treatment notes nor analyze Dr. Johnsen's evaluation. He did assign significant weight to the opinions of Dr. Lochner and Dr. Gunter after reciting their Section III findings, stating simply that their opinions were supported by and consistent with the medical evidence as a whole.

The claimant first argues that the ALJ erred in wholly failing to consider that she fell into a borderline age range for purposes of disability evaluation. On the date of the ALJ's decision, the claimant was 54 years old, and less than two months away from turning

55.  Under 20 C.F.R. § 404.1563[2], the Commissioner has established three age categories, two of which apply here: (i) a "person closely approaching advanced age," age 50-54, and (ii) a "person of advanced age," of 55 or older.  For a person closely approaching advanced age, "we will consider that your age along with a severe impairment(s) and limited work experience may seriously affect your ability to adjust to other work."  20 C.F.R. § 404.1563(d).  For a person of advanced age, "age significantly affects a person's ability to adjust to other work."  *Id.*

The ALJ is instructed to "not apply the age categories mechanically in a borderline situation."  20 C.F.R. § 404.1563.  A borderline situation exists "when the claimant is within 'a few days or months" of the next category[,]" *Daniels v. Apfel*, 154 F.3d 1129, 1133 (10th Cir. 1998), and, using the next higher age category would result in a disabled determination.  Courts have differed on what qualifies as falling within the borderline range.  *Compare Cox v. Apfel*, 166 F.3d 346 (10th Cir. 1998) (unpublished table opinion) (error where Plaintiff was within six months of next age category) *with Lambert v. Chater*, 96 F.3d 469, 470 (10th Cir. 1996) (claimant did not fall into borderline category where she was seven months short of the next category).  However, "it is clear that the ALJ must address the issue."  *Nugent v. Colvin*, 2014 WL 4854733, at *2 (E.D. Okla. Sept. 30, 2014), *citing Byers v. Astrue*, 506 Fed. Appx. 788, 791 (10th Cir. Dec. 27, 2012).  *See also Daniels*, 154 F.3d at 1133-1134 n.5 ("Determining whether a claimant falls within a

---

[2] The claimant's date last insured is December 31, 2018.  As such, for purposes of evaluating whether the claimant's age is in the borderline in this case, the date of the ALJ's decision, January 21, 2016, is used.

borderline situation appears to be a factual rather than discretionary matter, and the ALJ erred by not making the necessary factual finding."). Here, the claimant was less than two months from the category of "person of advanced age" at the time of the ALJ's decision, and she would have been considered disabled under the higher age category according to the Medical-Vocational Guidelines ("the Grids"), Rule 202.06. However, the ALJ's decision reflects his consideration of this factor when he stated in the opinion that the age categories would not be mechanically applied in a borderline situation (Tr. 41).

The claimant nevertheless argues that the ALJ *did not* properly consider her borderline age situation because he did not explain the factors he considered in making this decision. According to the Hearings and Appeals Litigation and Law Manual (HALLEX) I-2-2-42, an ALJ is instructed to consider all other factors relevant to the case, then use a "sliding scale" approach to determine which age category to use, where the closer in time to the next higher age category a claimant is, the more disadvantageous the claimant's age. Additionally, the ALJ is instructed to "explain in the decision that he or she considered the borderline age situation, state whether he or she applied the higher age category or the chronological age, and note the specific factor(s) he or she considered." HALLEX I-2-2-42(C)(5). *See also* POMS DI 25015.006(G) ("Document how you considered borderline age whether you allow or deny the claim: Explain your decision to use the next higher age category or your decision to use the claimant's chronological age, including the case-specific supporting factors."). Here, the ALJ simply stated that he found no adverse vocational factors to warrant the use of the higher age category, which appears to be an error, and insufficient, where he is instructed to note the specific factors considered.

-8-

Second, the claimant contends the ALJ failed to properly account for the opinions of Dr. Lochner and Dr. Gunter in the RFC assessment, and the Court agrees. Their opinions at Section I indicated marked limitations in the ability to understand, remember, and carry out detailed instructions, and the ALJ found the claimant could perform simple tasks with routine supervision, but the jobs identified *do not* account for those limitations with regard to the reasoning level requirements. The jobs of inspector/packer, DICOT § 559.687-074; small products assembler, DICOT § 706.684-022; and electrical accessory assembler, DICOT § 729.687-010 all have a reasoning level of 2, which requires a worker to "[a]pply commonsense understanding to carry out *detailed* but uninvolved written or oral instructions" [emphasis added]. The reasoning level best identifies the level of simplicity (or, conversely, complexity) associated with a job. *See Cooper v. Barnhart,* 2004 WL 2381515, at *4 (N.D. Okla. Oct. 15, 2004) ("The reasoning level, as identified by Plaintiff, appears more similar to whether or not a claimant has a limitation to performing only simple tasks.") [citations omitted]. If a claimant is limited to simple, repetitive tasks, it stands to reason that a job requiring the ability to understand and carry out detailed but uninvolved written or oral instructions, or to deal with problems involving several concrete variables, would create a conflict. *See McKinnon v. Astrue,* 2010 WL 3190621, at *5 (D. Colo. Aug. 12, 2010); *Allen v. Barnhart,* 2003 WL 22159050, at *10 (N.D. Cal. Aug. 28, 2003) (examining the requirements of the GED reasoning level of 2 and finding that "[t]he need to follow 'detailed' and 'involved' instructions exceeds the ALJ's limitation of plaintiff to 'simple, routine tasks.' Such instructions are not simple and uncomplicated, or limited to one or two steps."). "[T]he ALJ must investigate and elicit a reasonable

explanation for any conflict between the Dictionary [of Occupational Titles] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Haddock v. Apfel,* 196 F.3d 1084, 1091 (10th Cir. 1999). *See also Krueger v. Astrue,* 337 Fed. Appx. 758, 760–762 (10th Cir. 2009) (reversing and remanding in part because the ALJ failed to resolve a conflict between VE's testimony and DOT job descriptions); *Poppa v. Astrue,* 569 F.3d 1167, 1173 (10th Cir. 2009) (noting that SSR 00–4p "requires that an ALJ must inquire about and resolve any conflicts between a [VE's] testimony regarding a job and the description of that job in the [DOT]"); *Hackett v. Barnhart,* 395 F.3d 1168, 1175 (10th Cir. 2005) (applying *Haddock* to nonexertional limitations). Furthermore, "[t]he [ALJ] must explain the resolution of the conflict *irrespective of how the conflict was identified*." Soc. Sec. Rul. 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000) [emphasis added]. The ALJ did neither in this case.

Here, the ALJ failed to ask the VE to reconcile this conflict or clarify how the DOT could be applied to the claimant's mental limitations, and the ALJ therefore committed reversible error in violation of this Circuit's holding in *Haddock. See also Krueger*, 337 Fed. Appx. at 760–762 (reversing and remanding in part because ALJ failed to resolve conflict between VE's testimony and DOT job descriptions); *Hackett*, 395 F.3d at 1175 (applying *Haddock* to nonexertional limitations); *Poppa*, 569 F.3d at 1173 (noting that SSR 00–4p "requires that an ALJ must inquire about and resolve any conflicts between a [VE's] testimony regarding a job and the description of that job in the [DOT]"). In the Tenth Circuit, this apparent inconsistency is reversible error. *See Hackett*, 395 F.3d at 1176 (finding a limitation to simple and routine work tasks "inconsistent with the demands of

level-three reasoning," and reversing "to allow the ALJ to address the apparent conflict between Plaintiff's inability to perform more than simple and repetitive tasks and the level-three reasoning required by the jobs identified as appropriate for her by the VE."). *See also Ward v Colvin*, 2015 WL 9438272, at *3 (W.D. Okla. Sept. 17, 2015) (slip op.) ("The Court declines to find, as urged by the Commissioner, that to the extent GED reasoning levels are not specific mental or skill requirements, they can be disregarded when addressing the mental demands of jobs listed in the DOT.").

Although the unresolved conflict as to the claimant's mental limitations would have been harmless error if the ALJ had identified in his opinion other jobs that did not pose a conflict, it is not harmless here because all three jobs identified had reasoning levels of 2. *See Stokes v. Astrue,* 274 Fed. Appx. 675, 684 (10th Cir. 2008) (finding that any error on whether claimant could perform jobs was harmless error since there were still two jobs claimant could perform and no "reasonable factfinder could have determined that suitable jobs did not exist in significant numbers in either the region where Ms. Stokes lives or several regions of the country.").

For the reasons set forth above, the Court concludes that the decision of the Commissioner should be reversed and the case remanded to the ALJ for proper analysis of the medical opinions of record. If such analysis results in any adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 24th day of September, 2018.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**